IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| JIM PIERCE, Individually and On Behalf of All Others Similarly Situated<br><br>VS.<br><br>CLIFTON H. MORRIS, JR., et al. | § <br>§ <br>§  CIVIL ACTION NO. 4:03-CV-026-Y<br>§ <br>§  Consolidated with Civil Actions:<br>§  4:03-CV-048-Y; 4:03-CV-052-Y;<br>§  4:03-CV-059-Y; 4:03-CV-066-Y;<br>§  4:03-CV-071-Y; 4:03-CV-072-Y;<br>§  4:03-CV-073-Y; 4:03-CV-083-Y;<br>§  4:03-CV-084-Y; 4:03-CV-094-Y;<br>§  4:03-CV-096-Y; 4:03-CV-113-Y;<br>§  4:03-CV-115-Y; 4:03-CV-172-Y;<br>§  4:03-CV-179-Y; 4:03-CV-186-Y;<br>§  4:03-CV-188-Y. |

ORDER GRANTING MOTIONS TO DISMISS

Pending before the Court are the following motions: (1) defendant Americredit Corporation ("AmeriCredit") and the individual defendants[1] (collectively, "the company defendants")' Motion to Dismiss Second Amended Consolidated Complaint With Prejudice [doc. # 224]; (2) defendant Friedman, Billings, and Ramsey & Co., Inc. ("Friedman")'s Third Motion to Dismiss With Prejudice [doc. # 221]; and (3) defendant PricewaterhouseCoopers, L.L.P. ("PwC")'s Motion to Dismiss Second Amended Consolidated Complaint [doc. # 219], all of which were filed December 2, 2005. Having carefully reviewed the motions, responses, replies, the Court concludes that the motions should be GRANTED.

I. BACKGROUND

On January 13, 2003, plaintiff Jim Pierce, on behalf of himself and others similarly situated, filed a complaint against AmeriCredi-

---

[1] The individual defendants in this cause are Michael R. Barrington, Daniel E. Berce, Clifton H. Morris, Jr., Edward H. Esstman, Michael T. Miller, A.R. Dike, James. H. Greer, Douglas K. Higgins, Kenneth R. Jones, Jr., and Dean R. Mackey.

t, Morris, Berce, and Barrington.  Other suits involving substantially identical issues and various defendants were subsequently filed by different plaintiffs and, on April 16, the Court entered an order consolidating the cases.[2]  Plaintiffs filed a consolidated complaint on August 11.

Defendants filed motions to dismiss the consolidated complaint. Although Defendants' motions to dismiss were denied, the Court ordered Plaintiffs to file an amended consolidated complaint because the Court specifically found that Plaintiffs' consolidated complaint, at least partially, relied on the "group pleading" doctrine, failed to properly plead scienter, and failed to comply with the requirements, when applicable, of Federal Rule of Civil Procedure 9(b).  Plaintiffs filed their first amended consolidated complaint on June 1, 2004, and Defendants filed their second motions to dismiss on July 12.[3]  On September 30, 2005, the Court partially granted and partially denied the company defendants' motions by dismissing with prejudice Plaintiffs' claims pursuant to the Securities Exchange Act of 1934 ("the Exchange Act"), 15 U.S.C. § 78a *et seq.*, and Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5.  Plaintiffs' claims pursuant to the Securities Act of 1933 ("the Securities Act"), 15 U.S.C. § 77a, *et seq.*, were not dismissed and Plaintiffs were directed to file a second amended consolidated complaint asserting only those claims.  Plaintiffs filed their second amended consolidated complaint ("the live

---

[2] The Court entered amended orders of consolidation on May 16, 2003, April 27, 2004, and July 26, 2004.

[3] PwC's motion was actually filed on July 14, but on July 12 their motion to dismiss was included along with a motion to seal the motion to dismiss.

2

complaint") on October 28 and Defendants filed their motions to dismiss on December 2.

AmeriCredit is a national consumer-finance company that initiates or purchases auto-finance loans and then conveys those loans to special-purpose securitization trusts that issue various asset-backed securities. Plaintiffs allege that Defendants issued or caused AmeriCredit to issue materially false and misleading financial statements, resulting in an overstatement of net income. Plaintiffs seek damages on behalf of all persons who purchased or acquired AmeriCredit securities traceable to AmeriCredit's September 16, 2002, Public Offering ("Stock Offering") and AmeriCredit notes pursuant or traceable to AmeriCredit's October 2002 exchange offer of 9.25% Senior Notes due 2009 ("Notes Offering").[4]

Plaintiffs assert the following claims in the live complaint: (1) against all defendants except Miller, violation of § 11 of the Securities Act, 15 U.S.C. § 77k, ("first § 11 claim");[5] (2) against AmeriCredit, violation of § 12(a)(2) of the Securities Act, 15 U.S.C. § 77l(a)(2);[6] (3) against all defendants except Mackey and Friedman, violation of § 11 of the Securities Act, 15 U.S.C. § 77k, ("second § 11 claim");[7] (4) against AmeriCredit, violation of §

---

[4] On October 10, 2002, AmeriCredit filed an October 9 Registration Statement, Form S-4, to register 9.25% Senior Notes due May 1, 2009, as part of an offer to exchange all outstanding 9.25% Notes issued on June 19, 2002. (Pls.' Second Am. Consol. Compl. ¶ 63.) The October 9 Form S-4 incorporated PwC's August 6, 2002, Report of Independent Accountants.

[5] Count I of the live complaint.

[6] Count II of the live complaint.

[7] Count III of the live complaint.

3

12(a)(2) of the Securities Act, 15 U.S.C. § 77l(a)(2);[8] (5) against the individual defendants and Friedman, violation of § 15 of the Securities Act, 15 U.S.C. § 77o.[9]

## II. LEGAL STANDARDS

### A. Motion to Dismiss

"[A] motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982), *cert. denied*, 459 U.S. 1105 (1983) (quoting Wright & Miller, *Federal Practice and Procedure* § 1357 (1969)). The court must accept as true all well pleaded, non-conclusory allegations in the live complaint, and must liberally construe the live complaint in favor of the plaintiff. *See Kaiser Aluminum*, 677 F.2d at 1050. However, conclusory allegations, unwarranted deductions of fact, or "legal conclusions masquerading as factual [allegations] will not suffice to prevent [the granting of] a motion to dismiss." *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993); *see Spiller v. City of Tex. City, Police Dept.*, 130 F.3d 162, 167 (5th Cir. 1997); *Assoc. Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974). "Dismissal is proper if the live complaint lacks an allegation regarding a required element necessary to obtain relief." *Blackburn v. City of Marshall*, 42 F.3d 925, 930 (5th Cir. 1995). A court should not dismiss a complaint for failure to state a claim unless it appears beyond doubt from the face of the

---

[8] Count IV of the live complaint.

[9] Count V of the live complaint.

4

Case 4:03-cv-00026-Y   Document 241   Filed 08/16/06   Page 5 of 14   PageID 2967

plaintiff's pleadings that he can prove no set of facts in support of his claim that would entitle him to relief. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Garrett v. Commonwealth Mortgage Corp.*, 938 F.2d 592, 594 (5th Cir. 1991); *Kaiser Aluminum*, 677 F.2d at 1050.[10]

B.   <u>The Securities Act</u>

Section 11 of the Securities Act imposes civil liability on various persons when a registration statement for securities is materially misleading or defective. *See* 15 U.S.C. § 77k (2005); *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 861 (5th Cir. 2003) (citing 15 U.S.C. § 77k); *Pirelli Armstrong Tire Corp. Retiree Med. Bens. Trust v. Dynegy, Inc. ("Pirelli I")*, 339 F. Supp. 2d 804, 867 (S.D. Tex. 2004) (citing 15 U.S.C. § 77k(a); *Akerman v. Oryx Communications, Inc.*, 810 F.2d 336, 340 (2d Cir. 1987)). The burden on a § 11 plaintiff is relatively light since that section encompasses a strict-liability standard:

> [Section 11] was designed to assure compliance with the disclosure provisions of the [Securities] Act by imposing a stringent standard of liability on the parties who play

---

[10] The Court notes that the parties filed appendices along with their motions to dismiss. Typically, a court's review under Federal Rule of Civil Procedure 12(b)(6) is limited to the facts stated in the complaint and any documents either attached to the complaint or incorporated therein. FED. R. CIV. P. 12(b) (West 2004). Where matters outside the complaint are considered by the Court, the motion should be converted into a summary-judgment motion. *Id.* In securities-fraud cases, however, the Court is permitted to review certain documents outside the four corners of the live pleading. *See Lovelace v. Software Spectrum*, 78 F.3d 1015, 1018 (5th Cir. 1996) (citing *Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1354-55 (7th Cir.1995)); *In re Sec. Litig. Bmc Software*, 183 F.Supp.2d 860, 882 (S.D. Tex. 2001) (citing *Phillips v. LCI Intern., Inc.*, 190 F.3d 609, 618 (4th Cir. 1999); *Harris v. IVAX Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999); *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 808-09 (2d Cir. 1996)). Thus, the Court need not convert Defendants' motions to dismiss into motions for summary judgment.

>  a direct role in a registered offering.  If a plaintiff purchased a security issued pursuant to a registration statement, he need only show a material misstatement or omission to establish his prima facie case.  Liability against the issuer of a security is virtually absolute, even for innocent misstatements.

*Herman & Maclean v. Huddleston*, 459 U.S. 375, 381-82 (1983) (footnotes omitted).

The elements of a § 11 claim are: (1) an omission or misrepresentation (2) of a material fact required to be stated or necessary to make other statements made not misleading." *Krim v. BancTexas Group, Inc. ("BancTexas")*, 989 F.2d 1435, 1445 (5th Cir. 1993); *see also Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v Dynegy, Inc. ("Pirelli II")*, 226 F.R.D. 263, 271 (S.D. Tex. 2004). A fact is "material" if "'a reasonable investor would consider [it] significant in the decision whether to invest, such that it alters the total mix of information available about the proposed investment.'" *BancTexas*, 989 F.2d at 1445; *see also Kapps v. Torch Offshore, Inc.*, 379 F.3d 207, 213-214 (5th Cir. 2004) (citation omitted).  A plaintiff generally does not have to establish scienter, and actual knowledge of falsity is not an element of a § 11 claim. *Herman & Maclean*, 459 U.S. at 382; *Pirelli II*, 226 F.R.D. at 271. Mere conclusory allegations, however, will not withstand a motion to dismiss. *Kapps*, 379 F.3d at 210 (citing *Kane Enters. v. MacGregor USA Inc.*, 322 F.3d 371, 374 (5th Cir. 2003); *In re Mastercard Int'l Internet Gambling Litig.*, 313 F.3d 257, 261 (5th Cir. 2002)).

While § 11 imposes civil liability on issuers and other signatories of a registration statement, § 12(a)(2) only creates a

6

cause of action against the immediate seller of securities if the seller offered or sold the security to the plaintiff

> by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known of such untruth or omission.

15 U.S.C. § 77l(a)(2); *see also Rosenzweig*, 332 F.3d at 861-62. Section 12(a)(2) therefore requires privity, and imposes liability on defendants who directly pass title to the plaintiff or who successfully, actively, and directly solicit the transaction in which title passed to the plaintiffs. *Pinter v. Dahl*, 486 U.S. 622, 644 n.21 (1988); *see also Abell v. Potomac Ins. Co.*, 858 F.2d 1104, 1114 (5th Cir. 1988), *vacated and remanded on other grounds*, 492 U.S. 914 (1989) (citation omitted); *In re U.S. Liquids Secs. Litig.*, CIVIL ACTION NO. H-99-2785, 2002 U.S. Dist. LEXIS 26714, at *19-20 (S.D. Tex. Apr. 30, 2002) (citation omitted).

Section 15 of the Securities Act imposes joint and several liability on defendants who control persons under §§ 11 and 12. 15 U.S.C. § 77o; *see also Rosenzweig*, 332 F.3d at 862. To state a claim pursuant to § 15 a plaintiff must allege (1) a primary violation under §§ 11 or 12; and (2) that the § 15 defendant directly or indirectly controlled the person violating §§ 11 or 12. *See Kapps*, 379 F.3d at 221 (citation omitted).

Typically, only notice pleading pursuant to Federal Rule of Civil Procedure 8 is required to state a valid Securities-Act claim. *Kapps*, 379 F.3d at 210 (citation omitted).

7

III. <u>ANALYSIS</u>

A. <u>Damages</u>

Where a plaintiff fails to allege any conceivable damages for violation of the Securities Act his claims must be dismissed. *See Madison Part. Liquidity Investors v. USAA Prop. III, Inc.*, No. CIV.SA-98-CA-324-EP, 1999 WL 33292714, at *2 (W.D. Tex. July 16, 1999); *In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 347 (S.D.N.Y. 2003) (citation omitted); *In re Broderbund/Learning Co. Secs. Litig. v. Mattell, Inc.*, 294 F.3d 1201 (9th Cir. 2002).

1. <u>The First § 11 Claim</u>

Plaintiffs' first § 11 claim relates to the Shelf Offering. Defendants argue that Plaintiffs lack standing to assert the first § 11 claim because the only plaintiff alleging damage for that claim--Global Undervalued Securities Masterfund ("Global")--did not actually suffer damage. Global alleges that it purchased 2,000,000 shares at $7.50 a share pursuant to the September 2002 offering. (Pls.' Second Am. Consol. Compl. ¶ 62.) Plaintiffs do not appear to contest that on the date that this lawsuit was filed, January 13, 2003, Global still owned those 2,000,000 shares. (*See* Pls.' Second Am. Consol. Compl. Ex. A (Global's Certification).)[11]  The closing

---

[11] Section 27 of the Securities Act, 15 U.S.C. § 77z-1, requires that each plaintiff asserting Securities-Act claims who seeks to serve as a class representative provide a personally signed and sworn certification that is filed with the complaint and, among other things, "sets forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint." 15 U.S.C. § 77z-1(a)(2)(A)(iv) (2005). It stands to reason that a Securities-Act plaintiff may not recover for claims premised upon transactions not listed in its certification. And, it is clear that in evaluating whether a plaintiff has stated a claim for which he could be entitled to relief, a court must review the damages alleged by looking to the

8

price for AmeriCredit stock on January 13, 2003, was $9.22 a share. (Friedman's App. at 5 (YaHoo! Finance Result).)

Section 11 damages consist of

the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and

> (1) the value thereof as of the time such suit was brought, or
>
> (2) the price at which such security shall have been disposed of in the market before suit, or
>
> (3) the price at which such security shall have been disposed of after suit but before judgment if such damages shall be less than the damages representing the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and the value thereof as of the time such suit was brought.

15 U.S.C.A. § 77k(e) (LexisNexis 2006). Because the selling price for AmeriCredit stock on January 13, 2003, was greater than the price for which Global bought its AmeriCredit stock, Defendants argue that Plaintiffs have no claim for damages for the first § 11 claim. For the reasons more fully discussed in the filings by PwC, the company defendants, and Friedman, the Court agrees. Plaintiffs' § 11 claims relate back to the original filing date for this cause and, even if they do not, Global's commingling of its stock renders the Court unable to determine which of Global's shares are offering

---

plaintiff's § 27 certification. *See Pirelli I*, 339 F.Supp.2d at 868 (looking to the certification filed during the action to examine question of damages); *Albert Fadem Trust v. Am. Elec. Power Co.*, 334 F. Supp. 2d 985, 991 (S.D. Ohio 2004); *In re Select Comfort Corp. Secs. Litig.*, Civil No. 99-884, 2000 U.S. Dist. LEXIS 22697 (D. Minn. Jan. 27, 2000).

shares and thus support Plaintiffs' damages assertion and overall claim. *See Alpern v. UtiliCorp United*, 84 F.3d 1525, 1542-44 (8th Cir. 1996); *Newby v. Enron Corp. (In re Enron Corp. Secs., Derivative & ERISA Litigation)*, MDL-144 6, CIVIL ACTION NO. H-01-3624, 2005 U.S. Dist. LEXIS 34021 (S.D. Tex. June 21, 2005); *In re AFC Enters. Sec. Litig.*, 348 F. Supp. 2d 1363, 1379-80 (N.D. Ga. 2004); *Krim v. PCOrder.com*, 402 F.3d 489 (5th Cir. 2005). To rule otherwise would, in essence, allow a Securities-Act plaintiff to file Exchange-Act claims and delay filing Securities-Act claims until stock prices fall (assuming they do), giving the plaintiff two bites at the apple and rendering the defendant a sitting duck. Such a result is unsupported by the language of § 11.

Consequently, Plaintiffs have not alleged any conceivable damages for the first § 11 claim. Plaintiffs therefore lack standing to assert that claim, which the Court must dismiss.

### 2. The Second § 11 Claim

Plaintiffs' second § 11 claim relates to the Notes Offering. The company defendants and PwC argue that Plaintiffs lack standing regarding the second § 11 claim because the only plaintiff asserting damage for that claim--Muzinich & Co. ("Muzinich")--did not make investments protected by § 11. Muzinich's certification lists sixteen June 2002 purchases ("the Old Notes") and one December 13, 2002, purchase of AmeriCredit's 9.25% notes due May 1, 2009.

10

AmeriCredit's June 2002 sales were a private offering exempt from registration requirements. (Pls.' Second Am. Consol. Compl. ¶ 63; Corp. Defs.' App. at 231, 235 (Oct. 2002 Form S-4).) Only after October 2002, when AmeriCredit filed a registration statement for 9.25% notes due May 1, 2009, were registered notes exchanged or purchased. (*Id.*); *supra* note 4.

Muzinich held the Old Notes after acquiring them in June 2002 and then exchanged them for registered notes in the debt exchange. (Pls.' Second Am. Consol. Compl. ¶ 78.) On December 13, 2002, Muzinich purchased 9.25% notes due May 1, 2009, and sold those notes that same day. Thus, the only notes supporting the second § 11 claim are the unregistered notes originally purchased in June 2002 and exchanged for registered notes after October 2002.

Transactions not involving any public offering--i.e., sales of unregistered notes--are not protected by § 11. *See* 15 U.S.C.A. §§ 77d(2); 77k (LexisNexis 2006); *Gustafson v. Alloyd Co.*, 513 U.S. 561, 580-81 (1995). Section 11 only deals with material misrepresentations or omissions in registration statements. *See id.* The Old Notes are therefore not protected by § 11 because they were not purchased pursuant to a registration statement. Nor does the exchange of the Old Notes for registered notes entitle Plaintiffs to § 11 protection. *See* 17 C.F.R. § 230.152 ("The phrase transactions by an issuer not involving any public offering . . . shall be deemed to apply to transactions not involving any public offering at the

11

time of said transactions although subsequently thereto the issuer decides to make a public offering and/or files a registration statement.")  Section 11 protects against a misrepresentation in a registration statement of a fact material to a reasonable investor's consideration of whether to make an *investment*.  *See BancTexas*, 989 F.2d at 1445.  Muzinich had already *invested* in the 9.25% notes due May 1, 2009, at the time of the October 2002 registration statement, leaving those notes outside the protection of § 11.  Plaintiffs therefore have not stated a claim regarding the second § 11 claim because they have not sufficiently stated a claim for damages.  The second § 11 claim must therefore be dismissed.

B.   The § 12(a)(2) Claims

AmeriCredit argues that Plaintiffs lack standing to assert their § 12(a)(2) claims because Plaintiffs have not alleged that AmeriCredit was a "seller" pursuant to that section or is connected through privity to Plaintiffs' purchases of AmeriCredit securities.  *See* 15 U.S.C. § 77l(a).  The Court agrees with AmeriCredit for the reasons stated in the company defendants' reply brief and brief in support of their motion to dismiss.  The Court will therefore dismiss Plaintiffs' § 12(a)(2) claims.

C.   The § 15 Claim

As the Court has already discussed, § 15 imposes joint and

several liability on defendants who control persons under §§ 11 and 12. 15 U.S.C. § 77o; *see also Rosenzweig*, 332 F.3d at 862. To state a claim pursuant to § 15 a plaintiff must allege a primary violation under §§ 11 or 12. *See Kapps*, 379 F.3d at 221 (citation omitted). "Control person liability is secondary only and cannot exist in the absence of a primary violation." *Southland*, 365 F.3d at 384 (citing *Lovelace*, 78 F.3d at 1021 n.8); *see also Pirelli II*, 226 F.R.D. at 271, 272 n.8 ("Although worded differently, the control-person-liability provisions of § 15 of the [Securities] Act and § 20(a) of the [Exchange] Act are interpreted in the same manner.") ("§ 15 control-person liability is predicated on § 11 liability") (citation omitted); *Kapps*, 379 F.3d at 221. Because Plaintiffs have not stated a claim pursuant to §§ 11 or 12, they cannot state a claim under § 15. Consequently, that claim must also be dismissed.

## IV. CONCLUSION

Therefore, the company defendants' Motion to Dismiss Second Amended Consolidated Complaint With Prejudice [doc. # 224], Friedman's Third Motion to Dismiss With Prejudice [doc. # 221], and PwC's Motion to Dismiss Second Amended Consolidated Complaint [doc. # 219] are GRANTED.

Consequently, Plaintiffs' claims are hereby DISMISSED WITH PREJUDICE.  All costs shall be assessed against Plaintiffs.

SIGNED August 16, 2006.

_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE